**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

Elizabeth Eagle, on behalf of herself and all others similarly situated,

Plaintiff,

v.

GVG Capital, LLC d/b/a WeBuyHomes4Cash.org,

Defendant.

Case No. 4:22-cv-00638-SRB

**DEFENDANT GVG CAPITAL, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**Oral Argument Requested**

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**COMES NOW** Defendant GVG Capital, LLC, d/b/a WeBuy-Homes-4Cash.org, ("GVG Capital") will and hereby moves this Honorable Court for an order to dismiss Elizabeth Eagle's ("Plaintiff") Complaint for the failure to state a claim for which relief may be granted pursuant to the Federal Rules of Civil Procedure 12(b)(6) based on the following:

## Table of Contents


I. INTRODUCTION ........................................................................... 6

II. THE ALLEGED FACTS ........................................................................... 7

III. ARGUMENT ........................................................................... 8

A. Legal Standard ........................................................................... 8

B. Plaintiff's DNC Claims Under 47 C.F.R. § 64.1200(c)(2) Fail Because She Fails to Allege a Telephone Solicitation and Fails to Allege the Texts Were Sent Within a 12-Month Period. .................. 9

C. Plaintiff's Internal DNC Policy Claims Fail to State a Claim for Several Reasons ........................................................................... 11

1. GVG Capital's Texts Do Not Constitute Telemarketing .......... 11

2. Plaintiff Has Not Stated Facts Sufficient to Demonstrate GVG Capital Lacks an Internal DNC Policy. ........................... 13

3. Plaintiff Failed to State Facts Sufficient to Show That She Was Texted More Than Twice Within a 12-Month Period. ........................................................................... 15

D. Plaintiff's Seller Identification Claims Should Be Dismissed Because the Provision Only Applies to Telephone Calls, Not Text Messages ........................................................................... 16

IV. CONCLUSION ........................................................................... 18

## Table of Authorities

**Cases**

*Adam v. CHW Grp., Inc.*,
2021 WL 7285905 (N.D. Iowa Sept. 9, 2021)....................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................ 8, 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................8

*Berry v. City of St. Louis*,
2022 WL 2064605m (E.D. Mo. June 8, 2022) ....................................................8

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009)...............................9

*Callier v. Nat'l United Grp., LLC*,
2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)..................................................15

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011) ..............................................................14

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir.2009) ............................................................................14

*Doohan v. CTB Invs., LLC*,
427 F. Supp. 3d 1034 (W.D. Mo. 2019)............................................................17

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014, 68 Fed. Reg. 44143 (2003). ..............................................17

*Jance v. Homerun Offer LLC*,
2021 WL 3270318m (D. Ariz. July 30, 2021)............................................ 10, 12

*Jones v. City of St. Louis*,
2022 WL 17092348 (E.D. Mo. Nov. 21, 2022)....................................................8

*Knutson v. Blue Light Sec., Inc.*,
2018 WL 1172611m (S.D. Cal. Mar. 6, 2018) ..................................................10

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2020) ....................................................13

*Lustgraaf v. Behrens*,
619 F.3d 867 (8th Cir. 2010). ..........................................................8

*Meilleur v. AT & T Inc*.,
2011 WL 5592647 (W.D. Wash. Nov. 16, 2011)...............................................15

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 WL 6865772 (M.D. Fla. Dec. 31, 2013) ...................................................15

*Orea v. Nielsen Audio, Inc.*,
2015 WL 1885936 (N.D. Cal. Apr. 24, 2015)...................................................11

*Peter v. NantKwest, Inc.*,
140 S. Ct. 365 (2019)....................................................................17

*Qandil v. Long*,
2009 WL 10704972 (W.D. Mo. Oct. 1, 2009) ...................................................9

*Simmons v. Charter Commc'ns, Inc*.,
222 F. Supp. 3d 121 (D. Conn. 2016)...................................................14

Suttles v. Facebook, Inc.,
461 F.Supp.3d 479 (W.D. Tex. 2020). .................................................... 10, 12-13

*Toney v. Quality Res., Inc.*,
75 F. Supp. 3d 727 (N.D. Ill. 2014)...................................................15

*Torti v. Hoag*,
868 F.3d 666 (8th Cir. 2017) ..........................................................9

*Valdes v. Century 21 Real Est.*, LLC,
2019 WL 5388162 (D.N.J. Oct. 22, 2019) ...................................................14

**Other Authorities**

47 U.S.C. §227(c)(5)........................................................................10

47 C.F.R. § 64.1200 .......... 16, 17

47 C.F.R. § 64.1200(a)(9) .......... 16

47 C.F.R. § 64.1200(a)(9)(iii)-(iv) .......... 16, 17

47 C.F.R. § 64.1200(c) .......... 9

47 C.F.R. § 64.1200(c)(2). .......... 6, 9

47 C.F.R. § 64.1200(d) .......... 7, 11, 13, 17

47 C.F.R. § 64.1200(d)(3) .......... 13, 14

47 C.F.R. § 64.1200(d)(4) .......... 7, 16

47 C.F.R. § 64.1200(f)(12) .......... 13

47 C.F.R. § 64.1200(f)(13) .......... 7, 11, 12, 13

47 C.F.R. § 64.1200(f)(15) .......... 6, 9, 10

47 U.S.C. § 227(a)(4) .......... 13

47 U.S.C. § 227(b)(1) .......... 17

47 U.S.C. § 227(c) .......... 6, 9

47 U.S.C. § 227(c)(1) .......... 13

47 U.S.C. § 227(c)(5) .......... 9, 10, 15

Federal Rule of Civil Procedure 12(b)(6) .......... 8, 10

## SUPPORTING SUGGESTIONS

### I. INTRODUCTION

Plaintiff Elizabeth Eagle ("Plaintiff") fails to state any sufficient claims in her three-count Complaint against GVG Capital for several reasons. The main one being that all three claims fail simply because she does not allege a telephone solicitation or that the text message was sent for a telemarketing purpose as required for any claim under Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c).

First, the TCPA's implementing regulation that prohibits calls to "residential telephone subscriber" on the National Do Not Call Registry restricts only the making of "telephone solicitations." *See* 47 C.F.R. § 64.1200(c)(2). That term is defined as calls made without consent or an established business relationship "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *See* 47 C.F.R. § 64.1200(f)(15). Plaintiff failed to allege facts demonstrating GVG Capital was encouraging Plaintiff to purchase or rent anything. As such, Plaintiff cannot demonstrate a telephone solicitation was made and her claim fails. *Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 WL 7285905, at *12 (N.D. Iowa Sept. 9, 2021) (TCPA claims "would not prevail if a court found that [defendants'] calls were not telephone solicitations…).

Second, the TCPA's applicable Internal DNC provisions, including the Seller Identification provision, only require entities making "calls for telemarketing purposes" to maintain an internal do not call policy. *See* 47 C.F.R. § 64.1200(d). The term "telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *See* 47 C.F.R. § 64.1200(f)(13). As previously stated, Plaintiff has failed to allege facts demonstrating GVG Capital's alleged text contained a telemarketing purpose.

Additionally, as to the Internal DNC provision claims, Plaintiff fails to state plausible facts showing that GVG Capital lacked an internal DNC policy, nor has she alleged facts showing that she received more than one call within a 12-month period after any DNC request—which is required for a claim under the TCPA. 47 C.F.R. § 64.1200(d).

Lastly, the Seller Identification provision claim fails because this provision only applies to calls, not text messages. 47 C.F.R. § 64.1200(d)(4).

As the alleged facts preclude recovery in this case, the suit must be dismissed in its entirety, with prejudice.

## II. <u>THE ALLEGED FACTS</u>

Plaintiff allegedly received text messages allegedly from GVG Capital offering to buy her home. Complaint (Comp.) ¶ 13 and 22-27. Plaintiff

characterizes these texts as "solicitations" and contends they were made without her consent while her number was on the National Do Not Call Registry. *Id*. at ¶ 12 and 24. She further alleges that text messages were sent after she "opted out" of receiving them. *Id*. at ¶ 20-21 and 31.

## III. ARGUMENT

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. at 678. Thus, the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party." *Jones v. City of St. Louis*, No. 4:21-CV-137-NAB, 2022 WL 17092348, at *2 (E.D. Mo. Nov. 21, 2022) (citing *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010)).

On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555); *Berry v. City of St. Louis*, No. 4:21-CV-132-SPM, 2022 WL 2064605, at

*3 (E.D. Mo. June 8, 2022). And "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. (quoting *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (citation omitted)). In other words, the complaint must contain "more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation'" to suffice. *Qandil v. Long*, No. 08-00449-CV-DW, 2009 WL 10704972 (W.D. Mo. Oct. 1, 2009) (quoting *Iqbal*, 556 U.S. at 681 (citation omitted)). In sum, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted)).

### B. Plaintiff's DNC Claims Under 47 C.F.R. § 64.1200(c)(2) Fail Because She Fails to Allege a Telephone Solicitation and Fails to Allege the Texts Were Sent Within a 12-Month Period.

Section 227(c)(5) of the TCPA authorizes a suit where a Plaintiff receives two or more calls in violation of the FCC's DNC regulations within a one-year period. 47 U.S.C. § 227(c). The applicable regulation, 47 C.F.R. § 64.1200(c), bans "telephone solicitation" to numbers registered on the national DNC list. See 47 CFR § 64.1200(c)(2).

The term "telephone solicitation" is specially defined in the regulations. It means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is

transmitted to any person…" 47 CFR § 64.1200(f)(15). To state a claim under §227(c)(5) the Plaintiff has an affirmative obligation to state facts plausibly demonstrating a telephone solicitation was made. Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 663-664.

A telephone solicitation requires that the caller encourage the called party to buy or rent something. 47 C.F.R. § 64.1200(f)(15). GVG Capital's calls only offered to *buy* something from the Plaintiff. Courts are in universal agreement that such conduct does not constitute a solicitation. *Knutson v. Blue Light Sec.*, Inc., 17CV134-LAB (JMA), 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018) (Call attempting to buy information regarding people the plaintiff sold a home to so that defendant could sell security equipment to them did not constitute advertising); *Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (Offer to purchase plaintiff's home was not a TCPA violation). The "TCPA clearly defines the terms solicitation and telemarketing, and that definition does not include offers to purchase." *Jance*, 2021 WL 3270318 at *4.

Further, text messages do not qualify as "telephone solicitations" under the TCPA just because the text can help a company sell its services to a third-party business. *See Suttles v. Facebook, Inc.*, 461 F.Supp.3d 479 (W.D. Tex. 2020). The TCPA does not prohibit GVG Capital from offering to purchase property, goods, or services. It prohibits encouraging Plaintiff to purchase property, goods, or services,

and thus, the text messages Plaintiff received do not constitute solicitations. *See Orea v. Nielsen Audio, Inc.*, No. 14-CV-04235-JCS, 2015 WL 1885936 (N.D. Cal. Apr. 24, 2015) ("Calls asking to purchase the listener's labor, blood, or other service are not telephone solicitations.") (citations omitted).

GVG Capital is alleged to have made an offer to buy property, pure and simple. As GVG Capital is not alleged to have sent texts encouraging Plaintiff to buy or rent anything, it did not make a telephone solicitation. As such all three of her claims fail.

### C. Plaintiff's Internal DNC Policy Claims Fail to State a Claim for Several Reasons

Plaintiff's claims regarding GVG Capital's failure to maintain an internal DNC policy fail for several reasons. First, GVG Capital's text messages are not telemarketing as defined by 47 C.F.R. § 64.1200(f)(13). Second, Plaintiff has failed to state sufficient facts demonstrating that GVG Capital lacks an internal DNC policy. Lastly, Plaintiff has failed to state facts sufficient to show that she was texted more than twice within a 12-month period.

#### 1. GVG Capital's Texts Do Not Constitute Telemarketing.

A party engaged in telemarketing must maintain an internal DNC list, regardless of whether their calls constitute a telephone solicitation. 47 C.F.R. § 64.1200(d) ([n]o person or entity shall initiate any call [or text message] for ***telemarketing purposes*** to a residential telephone subscriber…") (emphasis added).

"Telemarketing" is defined, however, in a manner consistent with the definition of "telephone solicitation" previously discussed: "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). Given the similarities between the regulatory definition of "telemarketing," on the one hand, and "telephone solicitation," on the other, it is easy to see why Plaintiff's internal DNC claim also fails. Plaintiff's complaint lacks facts to demonstrate that the alleged texts were made for telemarketing purposes. Instead, Plaintiff argues that the text messages GVG Capital sent contained an offer to buy property. As noted previously, such a text simply does not constitute telemarketing. *Jance*, 2021 WL 3270318 at *4.

Plaintiff characterizes the messages' purposes as sent to either solicit "Plaintiff to sell her home in order for Defendant to resell" for a profit or solicit "Plaintiff to submit her information to Defendant's lead generation service and use Defendant's lead generation service, which Defendant would then sell to other businesses for a profit."[1] However, the fact GVG Capital or others might eventually profit from a message is not relevant to the critical question of whether the messages are, in fact, a "telephone solicitation." *See Suttles*, 461 F. Supp. 3d at 482-84 ("A message does not qualify as a 'telephone solicitation' just because it may help a

---

[1] Compl. at p 5 ¶ 24.

company sell advertisements to third parties."). The relevant question is whether those texts were sent for the "purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," 47 C.F.R. § 64.1200(f)(13), and here, GVG Capital did not encourage any sort of purchase. It simply offered to buy Plaintiff's house.

Therefore, because Plaintiff's Complaint does not allege facts showing that the purported texts were for "telemarketing purposes," her claim under Section 227(d) fails.

**2. Plaintiff Has Not Stated Facts Sufficient to Demonstrate GVG Capital Lacks an Internal DNC Policy.**

In order to state a claim for a violation of TCPA's Internal DNC provision, 47 C.F.R. § 64.1200(d), Plaintiff must plead sufficient facts to show that GVG Capital has failed to maintain its Internal DNC Policy. "A plaintiff must plead, at minimum, that (1) he or she is a residential telephone subscriber who (2) received a call made for purposes of telemarketing or solicitation purposes (3) from a person or entity that has not implemented the requisite procedures." *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 505 (D.R.I. 2020); *See* 47 U.S.C. § 227(a)(4), (c)(1); 47 C.F.R. § 64.1200(d), (f)(12). When a DNC request is made the entity in receipt of such "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made." 47 C.F.R. § 64.1200(d)(3). A violation of the internal DNC provisions only stems from "the initiation of the phone call without having

[first] implemented the minimum procedures" and not for any other reason. *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588 (S.D. Ohio 2011)(quoting *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir.2009)); see also *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 140 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017)("The mere fact that he received a call after his January 9 request [to be put on defendant's internal DNC list] is not a...violation").

Here, we do not know when Plaintiff made a DNC request to GVG Capital as she has failed to allege the dates of any of the alleged text messages. *Valdes v. Century 21 Real Est.*, LLC, No. CV 2:19-05411, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019) (Court found Internal DNC claim was sufficiently plead because plaintiff alleged multiple calls after 30 days from when he requested not to be called again by defendant). Because of this failure, we do not know whether or not those alleged texts were within the 30-day window to honor a request to be placed on an internal DNC list. *See* 47 C.F.R. § 64.1200(d)(3). The only relevant facts alleged to this claim are that Plaintiff gave instruction to "stop" on multiple occasions, and the test messages continued. Compl. at p. 4 ¶ 20. Again, this gives no indication of when this was done. Without this information alone, the Internal DNC Claim fails, and with no other facts claiming any failure to implement the requisite internal DNC procedures, this claim should not survive this Motion. *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *9 (W.D. Tex. Nov. 17, 2021)

(Motion to dismiss granted because plaintiff failed to allege defendant "does not have procedures in place for maintaining its own do-not-call list.").

Therefore, as Plaintiff has failed to meet her burden to sufficiently plead that GVG Capital has failed to maintain an Internal DNC Policy, this Court should dismiss under 12(b)(6).

### 3. Plaintiff Failed to State Facts Sufficient to Show That She Was Texted More Than Twice Within a 12-Month Period.

In order to state any DNC claim, a plaintiff must "allege facts allowing a reasonable inference that she "received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations." *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727 (N.D. Ill. 2014) (quoting 47 U.S.C. § 227(c)(5)); *Meilleur v. AT & T Inc.*, No. C11-1025 MJP, 2011 WL 5592647, at *2 (W.D. Wash. Nov. 16, 2011) (dismissing complaint where plaintiff alleged that she received calls from defendant prior to a specific date, but failed to allege that two were made in a 12-month period); *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *9 (M.D. Fla. Dec. 31, 2013), aff'd, 797 F.3d 1302 (11th Cir. 2015) (dismissing claim because of failure to allege more than two calls were made within a 12-month period).

Again, Plaintiff has not alleged when any of the alleged text messages were made here. And, as such, it cannot be determined whether two or more calls were

placed within the requisite 12-month period. Therefore, the Court must dismiss this claim because it clearly fails under 12(b)(6).

### D. Plaintiff's Seller Identification Claims Should Be Dismissed Because the Provision Only Applies to Telephone Calls, Not Text Messages

Even if the Court finds the text messages here are solicitation, the seller-identification regulations apply only to *calls*, not text messages. 47 C.F.R. § 64.1200(d)(4) (emphasis added) provides that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

In 47 C.F.R. § 64.1200, the FCC specifies that "calls" can include text messages in some contexts. *See* 47 C.F.R. § 64.1200(a)(9) ("As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call."). Other sections of the TCPA's implementing provisions refer to "voice calls" and "text messages" as two distinct concepts. *See* 47 C.F.R. § 64.1200(a)(9)(iii)-(iv) (regulating "voice calls and text messages" by financial institutions and by, or on behalf of medical providers). Thus, clearly the FCC knows how to distinguish between calls and texts.

Plaintiff may argue that the FCC has adopted *Doohan's* "texts are calls" interpretation, but the FCC has not adopted this argument for the disclosure

requirements Plaintiff's Seller Identification claim is based on. *Doohan v. CTB Invs., LLC*, 427 F. Supp. 3d 1034, 1042 (W.D. Mo. 2019). The FCC has adopted this interpretation when discussing "the prohibition against automatic telephone dialing in 47 U.S.C. § 227(b)(1)." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165, 68 Fed. Reg. 44143 (2003)). But, that provision is not at issue here, and the context of the FCC's regulations is consistent with GVG Capital's argument.

In its regulations, the FCC distinguishes between voice calls and texts. *See* 47 C.F.R. § 64.1200(a)(9)(iii)-(iv). There is no reason to think that the FCC's construction of "telephone call" as including text messages in 47 U.S.C. § 227(b)(1) has anything to do with the "call" in 47 C.F.R. § 64.1200. The fact that the regulations distinguish between calls and texts indicates that the use of only the term "text" in 47 C.F.R. § 64.1200(d) was deliberately narrower than the construction given to 47 U.S.C. § 227(b)(1). *See Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 373 (2019) (stating that when two terms "appear in tandem across various statutes" it "indicates that Congress understands the two terms to be distinct and not inclusive of each other").

The language of 47 C.F.R. § 64.1200(d) is plain and unambiguous—it applies only to calls, and it has no application here. For this reason, Plaintiff's Seller Identification claim fails.

## IV. CONCLUSION

Based on the foregoing, GVG Capital respectfully requests that this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: December 19, 2022

*/s/Tori L. Guidry*
Eric J. Troutman (*pro hac vice* forthcoming)
Tori L. Guidry (*pro hac vice* forthcoming)
530 Technology Drive
Suite 200
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
Email: troutman@troutmanfirm.com

**RASMUSSEN DICKEY MOORE, LLC**

*/s/ Patrick D. Murphy*
Patrick D. Murphy #52890
RoseAnn Sorce #74365
1001 East 101st Terrace, Suite 300
Kansas City, Missouri 64131
Telephone: (816) 960-1611
Facsimile: (816) 960-1660
pmurphy@rdm.law
rsorce@rdm.law

*Counsel for Defendant GVG Capital, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 19, 2022, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

*/s Patrick D. Murphy*
Patrick D. Murphy