## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

Elizabeth Eagle, on behalf of herself and all
others similarly situated,

        Plaintiff,

    v.

GVG Capital, LLC d/b/a
WeBuyHomes4Cash.org,

        Defendant.

CASE NO. 4:22-cv-638-SRB

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT GVG CAPITAL, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

i

## Table of Contents

Introduction ........................................................................................................................... 1

Statement of Facts ................................................................................................................ 2

Argument .............................................................................................................................. 3

   I.   Procedural Standard. ............................................................................................... 3

  II.  Plaintiff adequately alleges that she received two or more communications within a 12-month period, and that Defendant continued to deliver text messages after being instructed to stop doing so ............................................................................................................. 4

     A.  Plaintiff received two or more communications within a 12-month period ..................... 4

     B.  Plaintiff adequately alleges her DNC claims. ................................................. 5

 III.  Defendant's text messages qualify as solicitation or telemarketing messages. .................. 7

     A.  The entire purpose of Defendant's telemarketing and solicitation messages was to entice Plaintiff to use Defendant's home selling services. ............................................ 8

     B.  Even if the Court finds that Plaintiff did not sufficiently allege that Defendant was offering home selling services, Defendant's text messages still qualify as solicitation and telemarketing messages. ............................................................................... 10

 IV.  Telemarketing identification regulations apply to text messages and telephone calls. ....... 13

  V.  If this Court finds any of Plaintiff's allegations lacking, it should allow leave to amend. ... 15

Conclusion ........................................................................................................................... 15

Case 4:22-cv-00638-SRB   Document 19   Filed 01/16/23   Page 2 of 21

# Table of Authorities

**Cases**

*Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 U.S. Dist. LEXIS 170620 (N.D. Iowa Sep. 9, 2021)..................................................................................................................... 14

*Anderson v. Catalina Structured Funding, Inc.*, No. 1:21-cv-197, 2021 U.S. Dist. LEXIS 242657 (W.D. Mich. Dec. 21, 2021)............................................................. 10, 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 3

*Buja v. Novation Capital, Ltd. Liab. Co.*, No. 15-81002-CIV-MARRA, 2017 U.S. Dist. LEXIS 231500 (S.D. Fla. Mar. 30, 2017) ..................................................................... 11

*Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 U.S. Dist. LEXIS 223278 (W.D. Tex. Nov. 17, 2021) ....................................................................................... 7

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .................................................... 13

*Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2021 U.S. Dist. LEXIS 70436 (N.D. Cal. Apr. 12, 2021)......................................................................................... 13

*Chinitz v. NRT W., Inc.*, No. 18-cv-06100-NC, 2019 U.S. Dist. LEXIS 27134 (N.D. Cal. Feb. 20, 2019)................................................................................................................. 9

*Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034 (W.D. Mo. 2019) ........................... 14

*Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464 (E.D. Wis. May 16, 2022)................................................................................................................. 6

*Hand v. Beach Entm't Kc*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020) ............................. 14

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020) ....................... 3

*Hewitt v. Synchrony Bank*, No. 17-00874-CV-W-ODS, 2017 U.S. Dist. LEXIS 203971 (W.D. Mo. Dec. 12, 2017)................................................................................................ 3

*Jance v. Homerun Offer, LLC*, No. CV-20- 00482-TUC-JGZ, 2021 U.S. Dist. LEXIS 143145, (D. Ariz. July 29, 2021)............................................................................................. 12

*Knutson v. Blue Light Sec., Inc.*, 17CV134-LAB (JMA), 2018 U.S. Dist. LEXIS 36745 (S.D. Cal. Mar. 6, 2018) .............................................................................................. 12

*Martin v. Comcast Corp.*, No. 12 C 6421, 2013 U.S. Dist. LEXIS 169221 (N.D. Ill. Nov. 26, 2013).................................................................................................................. 6

iii

*Meilleur v. AT&T Inc.*, No. C11-1025 MJP, 2011 U.S. Dist. LEXIS 132473 (W.D. Wash. Nov. 16, 2011) ................................................................................................................................ 4

*Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459-Orl-36KRS, 2013 U.S. Dist. LEXIS 181732 (M.D. Fla. Dec. 31, 2013) .................................................................................. 5

*Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302 (11th Cir. 2015) ............... 15

*Orea v. Nielsen Audio, Inc.*, No. 14-cv-04235-JCS, 2015 U.S. Dist. LEXIS 54916 (N.D. Cal. Apr. 24, 2015) ........................................................................................................................... 12

*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-0532-JCS, 2015 U.S. Dist. LEXIS 77294 (N.D. Cal. June 15, 2015) ...................................................................................................................... 9

*Pariseau v. Built USA, LLC*, No. 8:21-cv-2902-SDM-JSS, 2022 U.S. Dist. LEXIS 139321 (M.D. Fla. Aug. 5, 2022) ........................................................................................................... 15

*Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175 (D. Utah 2021) ......................................................... 14

*Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330 (W.D. Mo. Apr. 28, 2020) ......................................................................................................... 14

*Suttles v. Facebook*, 461 F. Supp. 3d 479 (W.D. Tex. 2020) ........................................................ 13

*Taylor v. KC VIN, LLC*, No. 4:19-cv-00110-NKL, 2019 U.S. Dist. LEXIS 207797 (W.D. Mo. Dec. 3, 2019) ............................................................................................................................. 14

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ............................................. 5

*Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 21, 2019) ................................................................................................................... 7

*Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193 (M.D. Fla. 2014) ............................... 5

*WinRed, Inc. v. Ellison*, 581 F. Supp. 3d 1152 (D. Minn. 2022) ..................................................... 3

**Statutes**

47 U.S.C. § 227(c)(5) .................................................................................................................. 4, 15

**Other Authorities**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 272 (2003) ..................................................................................................................... 14

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793-94 (2005) ..................................................................................................... 7, 8

iv

**Regulations**

47 C.F.R. § 64.1200 ......................................................................................... 5, 7, 13, 14

## Introduction

From May 2022 until she filed this case in October 2022, Elizabeth Eagle ("Plaintiff") received dozens of text messages from a rotating list of telephone numbers advertising "quotes" or "offers" to purchase Plaintiff's home. Each of these messages directed Plaintiff to changing URLs that, in turn, redirected Plaintiff to WeBuyHomes4Cash.org, a website run by GVG Capital, LLC ("Defendant") for the purpose of identifying "motivated home seller" leads to market to third-party homebuyers. Each of these dozens of messages was delivered to Plaintiff's telephone number despite (1) her registering her phone number on the National Do-Not-Call Registry; (2) Defendant having no prior express consent from Plaintiff to deliver the messages; and (3) her having *zero* interest in selling her home or being marketed to by Defendant. Were that not enough, Defendant continued its telemarketing campaign to Plaintiff despite being repeatedly instructed to stop. Defendant suggests that all of this misconduct was legal. It is mistaken.

In short, Defendant primarily argues that the text messages it delivered to Plaintiff's phone were not "telemarketing" or "solicitation" messages as a matter of law, and therefore, that the TCPA's telemarketing regulations do not apply to it. However, this ignores FCC guidance stating that similar real estate communications are regulated "solicitations," and more significantly, ignores Plaintiff's allegations that Defendant delivered the text messages to advertise and solicit the use of its services: connecting Plaintiff with interested homebuyers to sell Plaintiff's home, in exchange for payment to Defendant for facilitating the transaction—just like a real estate agent. At this early pleading stage, nothing more is required.

Defendant's remaining arguments either (1) require a misreading of Plaintiff's allegations, such as Defendant's contention that Plaintiff failed to allege that she received multiple text messages within a 12-month period; or (2) seek for this Court to depart from every other court to address the issue, and unilaterally declare that the TCPA's telemarketing regulations cannot apply

1

to text messages. This Court should not do so, and for all of the reasons discussed below, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss. ECF No. 9.

<strong>Statement of Facts</strong>

Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number, which she uses as her personal residential telephone number. ECF No. 1 at ¶¶ 9-10. Plaintiff's telephone number is, and has been at all relevant times, registered to the National Do-Not-Call Registry, since she registered it in August 2012. *Id*. at ¶ 12.

Beginning in or around May 2022, Plaintiff received dozens of telemarketing text messages from a series of rotating telephone numbers, advertising a "magnificent quote" or "fabulous proposition" involving Plaintiff's home in an effort to drive Plaintiff to Defendant's website, WeBuyHomes4Cash.org. *Id.* at ¶¶ 13, 22. However, Plaintiff did not recognize the sender, did not request any quotes, and had zero interest—then or at any point in many years—to sell her home or use Defendant's services. *Id.* at ¶¶ 14-19. Plaintiff instructed Defendant multiple times to "end" or "cancel" its delivery of text messages, but Defendant refused to heed those instructions and continued delivering text messages to Plaintiff's telephone number until she filed this lawsuit, after which the text solicitations finally stopped. *Id.* at ¶¶ 20-21.

Defendant's website, WeBuyHomes4Cash.org, is a website that collects consumer data and resells that information to other parties as "motivated home seller" leads. *Id.* at ¶ 23. In other words, Defendant seeks to solicit homeowners to submit their personal information and consent to WeBuyHomes4Cash.org, and therefore use Defendant's lead generation services, which Defendant then sells to other businesses for a profit. *Id.* at ¶ 24. In Defendant's own words: "[i]nformation submitted on this site will be sent to a network which consists of real estate investors, real estate agents, and direct buyers" and that "[t]he purpose of webuyhomes4cash.org is to providing [sic] home selling services to it's [sic] users. To gain access to our services, you

2

must submit certain information about yourself and the home you wish to sell, which information will be used by webuyhomes4cash.org and such affiliates of webuyhomes4cash.org to assist you in the home selling process." *See* Exs. A-B.[1]

In response to this barrage of text messages directing Plaintiff to WeBuyHomes4Cash.org, Plaintiff filed this lawsuit. Plaintiff alleges that Defendant violated the TCPA in three separate ways: (1) delivering solicitation text messages to her residential telephone number, absent her prior express written consent; (2) delivering telemarketing text messages to her residential telephone number after being instructed to stop (the "DNC" claim); and (3) delivering telemarketing text messages to her telephone number while failing to disclose required information. *Id.* at ¶¶ 65-89.

## Argument

### I.    Procedural Standard.

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged." *Hewitt v. Synchrony Bank*, No. 17-00874-CV-W-ODS, 2017 U.S. Dist. LEXIS 203971, at *3 (W.D. Mo. Dec. 12, 2017) (Smith, J.).

---

[1]    These exhibits are pages from publicly available WeBuyHomes4Cash.org's website. *See* ECF No. 1 at ¶ 22. The court may take judicial notice of a party's website. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination."); *WinRed, Inc. v. Ellison*, 581 F. Supp. 3d 1152, 1167 n.9 (D. Minn. 2022) (same).

[2]    Unless otherwise indicated, all internal citations are omitted and all emphasis is added.

II. **Plaintiff adequately alleges that she received two or more communications within a 12-month period, and that Defendant continued to deliver text messages after being instructed to stop doing so.**

A. **Plaintiff received two or more communications within a 12-month period.**

Defendant suggests that Plaintiff fails to "Allege the Texts Were Sent Within a 12-Month Period." ECF No. 9 at 9. However, even a cursory review of Plaintiff's complaint demonstrates that this is not true: Plaintiff alleges that "[i]n or around May 2022 and continuing through the present, Plaintiff began receiving text messages" from Defendant, and subsequently attached screenshots of six of those distinct text messages—including one showing a date in June 2022—as well as two different screenshots of Plaintiff's instructions to Defendant to stop delivering those messages. ECF No. 1 at ¶¶ 13, 20. In addition to those eight screenshots, Plaintiff further alleges that she "estimates that she has received dozens of similar text messages" since May 2022. *Id.* at ¶ 25. Thus, Plaintiff alleges that Defendant delivered multiple text messages to her telephone number between May 2022 and October 2022, thereby meeting the requirement that she allege that she has received "more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5).

The cases Defendant cites are plainly inapposite. In *Meilleur v. AT&T Inc.*, the court dismissed the plaintiff's claims, with leave to amend, because he "alleges that he received calls from AT&T prior to January 6, 2010, but he fails allege that two were made in a twelve month period." No. C11-1025 MJP, 2011 U.S. Dist. LEXIS 132473, at *7 (W.D. Wash. Nov. 16, 2011). Here, on the other hand, Plaintiff alleges that she received more than one communication since May 2022 (indeed, she alleges she received dozens of such messages since May 2022), and provided records of at least eight of those communications. ECF No. 1 at ¶¶ 13, 20. In *Murphy v. DCI Biologicals Orlando, LLC*, the court dismissed the plaintiff's claims premised on the allegation that he "received at least two calls before 8 a.m. or after 9 p.m." because he only alleged

4

that he received two communications: "One was at 8:33 p.m., and the other was at 9:11 p.m.," and so the plaintiff did not allege receipt of two violative messages. No. 6:12-cv-1459-Orl-36KRS, 2013 U.S. Dist. LEXIS 181732, at *34 (M.D. Fla. Dec. 31, 2013). And in *Toney v. Quality Res., Inc.*, the court *denied* the defendant's motion to dismiss based on the plaintiff's supposed failure to allege receipt of multiple calls. 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014).

Because Plaintiff plainly alleges receipt of numerous violative text messages in a 12-month period, this Court should accordingly deny Defendant's motion to dismiss.

### B. Plaintiff adequately alleges her DNC claims.

Defendant also contends that Plaintiff's DNC claims fail because she does not allege the specific dates corresponding with each instance where Plaintiff instructed Defendant to stop texting her. ECF No. 9 at 14. This is a non-sequitur because Plaintiff alleges that Defendant did not implement *any* minimum procedures to heed consumers' instruction to cease delivering text messages to their residential telephone numbers. ECF No. 1 at ¶¶ 20, 34, 78-79. Because of this, Plaintiff need not provide a precise date for each instruction to "stop", and Defendant's "form-over-substance" argument fails.

Facing similar arguments, the court in *Wagner v. CLC Resorts & Devs., Inc.* declined to dismiss that plaintiff's DNC-based claims under the TCPA. 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014). There, the plaintiff alleged that the defendant violated 47 C.F.R. §§ 64.1200(c)(2) and (d) and the internal DNC provisions located therein, and in response, the defendant "contends that the Court should dismiss [plaintiff's] claim because [plaintiff] fails to allege that he received any calls from [defendant] beyond the 30-days prescribed under 47 C.F.R. § 64.1200(d)(3)." *Id.* The court found that the defendant's argument was "without merit," because "a violation of section 64.1200(d) is 'the initiation of the phone call without having implemented the minimum procedures,'" and the plaintiff sufficiently alleged that the defendant "violated section 64.1200(d)

by initiating calls for telemarketing purposes to telephone subscribers, including [plaintiff], without instituting procedures that comply with regulatory standards." *Id.* Thus, the "[plaintiff's] allegation that [defendant] violated 47 C.F.R. § 64.1200(d), supports his claim under Section 227(c)(5) of the TCPA," even without specifically alleging that the defendant delivered calls after those thirty days elapsed. *Id.*

Moreover, it is not necessary for Plaintiff to allege that these illegal text messages continued more than 30 days after her request to be placed on the internal DNC list. This is because the regulations require "that the [DNC] request must be processed in a 'reasonable' time but not later than 30 days," which is different from pronouncing that any period less than thirty days is *per se* "reasonable." *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 U.S. Dist. LEXIS 169221, at *17 (N.D. Ill. Nov. 26, 2013) (denying motion to dismiss where DNC request processed in under thirty days, because there was insufficient evidence to determine "either that a week or 10 days is reasonable as a matter of law (as Comcast argues) or that the request should have been processed immediately upon receipt simply because Comcast is a large corporation (as plaintiff argues)").[3] And all of this assumes that Defendant employs any DNC procedures whatsoever—Plaintiff alleges that it does not. *See* ECF No. 1 at ¶ 34.

Defendant's cited authority does not lead to a contrary conclusion. In *Valdes v. Century 21 Real Estate, LLC*, the court *denied* a motion to dismiss, without discussion, where the plaintiff alleged that he received two or more calls from the defendant more than 30 days after instructing the defendant to stop. No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616, at *9 (D.N.J. Oct. 21,

---

[3]      *See also Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464, at *9 (E.D. Wis. May 16, 2022) ("Indeed, if Align's system was such that it could easily and immediately remove a person from a call list, then perhaps a jury would find that it was unreasonable to call that person within an hour of their do-not-call request. In any case, it is an issue for the fact-finding stage of this matter.").

2019). And, regarding *Callier v. Nat'l United Grp., LLC*, the plaintiff's allegations were manifestly different: "[Plaintiff] does not assert that he asked [defendant], or the telemarketers, to stop calling him, nor does he provide any facts relating to the nature of the violations." No. EP-21-CV-71-DB, 2021 U.S. Dist. LEXIS 223278, at *27 (W.D. Tex. Nov. 17, 2021). Here, Plaintiff specifically instructed Defendant to "end" and "cancel" its delivery of text messages on multiple occasions. *See* ECF No. 1 at ¶ 20 (providing screenshots).

Regardless, Defendant's position here is a factual one rather than a legal one—one that is inappropriate to resolve at this juncture. In short, Plaintiff alleges that Defendant repeatedly delivered text messages to her residential telephone number after being instructed to stop, and that those messages were delivered between May 2022 and the filing of her complaint. Accepting these allegations as true—as the Court must at this juncture—Plaintiff adequately alleges that Defendant failed to implement or use its DNC policy with respect to its communications with Plaintiff and the members of the proposed class, and this Court should not dismiss her claims solely because she does not provide a specific date to *every* cited communication.

## III. Defendant's text messages qualify as solicitation or telemarketing messages.

Defendant next suggests that it is immunized from the TCPA's regulations because the text messages it delivered to Plaintiff's telephone number are not "telemarketing" or "solicitation" messages. *See* ECF No. 9 at 9-13. This argument misinterprets Plaintiff's allegations, and nevertheless relies on caselaw that is either inapposite or of limited relevance.

To start, the TCPA's implementing regulations define "solicitation" and "telemarketing" similarly: "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. §§ 64.1200(f)(13), (15). In 2005, while interpreting the definition of "telephone solicitation," the FCC clarified "that a telephone solicitation would include calls by real estate

agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793-94 (2005) ("2005 FCC Report"). On the other hand, "calls by real estate agents who represent only the potential buyer to someone who has advertised their property for sale, do not constitute telephone solicitations, so long as the purpose of the call is to discuss a potential sale of the property to the represented buyer." *Id.* For the reasons discussed below, the FCC's guidance disposes of Defendant's arguments.

### A. The entire purpose of Defendant's telemarketing and solicitation messages was to entice Plaintiff to use Defendant's home selling services.

Given the FCC's interpretation of "solicitation" or "telemarketing" messages as they apply to real estate agents offering their services to homeowners, *see supra* Argument § III, it is telling that Defendant ignores Plaintiff's allegations that Defendant is not purporting to buy property from Plaintiff and instead is recruiting Plaintiff to sign up for Defendant's real estate lead generation services. ECF No. 1 at ¶¶ 23-24. Unlike offers to purchase a home—as will be addressed *infra* Argument § III.B—Defendant solicited Plaintiff to use its real estate lead generation services. That is, Defendant requested that Plaintiff submit her personal information and provide consent for Defendant to sell Plaintiff's "lead" information to interested property buyers and investors. *See id.* This firmly fits within the definition of "solicitation" or "telemarketing."

Indeed, a real estate agent calling "property owners for the purpose of offering their services to the owner" is contacting property owners to encourage them to use the agent's services to sell their home to interested third party purchasers, and—in the eyes of the FCC—this manner of communication is solicitation. *See* 2005 FCC Report at 3793-94. Similarly, a real estate brokerage advertising its "real estate brokerage services" to unrepresented consumers is a communication "[whose] sole purpose . . . is to allow NRT to pitch its brokerage services to the

called party," and is therefore, "made 'for the purpose of encouraging the purchase' of NRT's brokerage services." *Chinitz v. NRT W., Inc.*, No. 18-cv-06100-NC, 2019 U.S. Dist. LEXIS 27134, at *6-7 (N.D. Cal. Feb. 20, 2019) (denying motion to dismiss as "the Court can plausibly infer that the purpose of the calls was to encourage the purchase of NRT's services, *i.e.*, telemarketing.").

Relevant, then, is that the subject text messages directed Plaintiff to Defendant's website, which notes that "[i]nformation submitted on this site will be sent to a network which consists of real estate investors, real estate agents, and direct buyers" and that "[t]he purpose of webuyhomes4cash.org is to providing [sic] home selling services to it's[sic] users . . . to assist you in the home selling process." *See* Exs. A-B. Thus, Defendant explicitly acknowledges that it is offering to sell services to interested consumers on its website. And, even if the acknowledgment wasn't so explicit, Defendant's offerings closely mirror that of a real estate agent or brokerage: to connect Plaintiff—a homeowner—with interested third party purchasers, in exchange for payment for facilitating the transaction.

Defendant briefly suggests that "text messages do not qualify as 'telephone solicitations' under the TCPA just because the text can help a company sell its services to a third-party business," ECF No. 9 at 10, but this argument is undeveloped and ignores relevant caselaw. To the extent that Defendant contends that referral company messages cannot qualify as "telemarketing" or "solicitation," it is incorrect. In *Panacci v. A1 Solar Power, Inc.*, for example, the district court held that a plaintiff adequately alleged that a solar power referral company violated the TCPA even though it only sought to refer the called party to another entity, thereby rejecting the defendants' argument that "the mere attempt to make a referral does not establish a telephone solicitation and nor are referrals prohibited under the TCPA." No. 15-cv-0532-JCS, 2015 U.S. Dist. LEXIS 77294, at *15-16 (N.D. Cal. June 15, 2015) (denying motion to dismiss where, "based on the allegations

in the Complaint, it is reasonable to infer that NREC intended to refer Plaintiff to A1 Solar for the purpose of encouraging Plaintiff to purchase A1 Solar's services.").

At bottom, Plaintiff alleges that Defendant delivered text messages to Plaintiff for the purpose of offering its "home selling services" to her and to provide her information to interested third party purchasers, for a profit. *See* Ex. B.[4] In essence, Defendant is soliciting Plaintiff to act akin to her agent and provide her "motivated home seller" information to interested third party buyers in exchange for payment. Through its motion to dismiss, Defendant completely ignores this parallel. This Court should not, and should accordingly deny Defendant's motion on this basis.

### B. Even if the Court finds that Plaintiff did not sufficiently allege that Defendant was offering home selling services, Defendant's text messages still qualify as solicitation and telemarketing messages.

In the alternative, even if the Court determines that Plaintiff did not sufficiently allege that Defendant was offering home selling services through its lead generation platform, and Defendant was solely seeking to purchase Plaintiff's home and later resell it to interested investors—as Defendant suggests through its motion—the messages would still qualify as telemarketing or solicitation messages. This is because, by soliciting Plaintiff to sell her home to Defendant, Defendant was necessarily soliciting the purchase and use of its services.

In *Anderson v. Catalina Structured Funding, Inc.*, the court addressed whether a company calling consumers to purchase structured annuities was delivering "solicitation" or "telemarketing" messages, and in doing so, found that such offers to purchase annuities were a hybrid offer to purchase something and also to sell a service. No. 1:21-cv-197, 2021 U.S. Dist. LEXIS 242657, at *17 (W.D. Mich. Dec. 21, 2021) ("Here, though, where Plaintiff has expressed no interest in

---

[4]     Defendant separately advertises on its website that it uses "[a]dvanced targeting methods to generate the perfect 'motivated home seller' lead." *See* Ex. C. For the same reasons discussed *supra* n.2, the Court may take judicial notice of Defendant's website.

selling, and Defendant is in the business of offering liquidity to structured settlement holders, Defendant may be offering to make a purchase, but it is also marketing a service. To suggest it is not is too clever by half."). This is because, in offering to purchase those annuities, the defendant also offered necessary services to complete the transactions, such as "processing payment applications, computing the present value of the structured settlement, filing all necessary legal documents, and the like." *Id.* at *13.

In reaching this conclusion, the *Anderson* court repeatedly cited to *Buja v. Novation Capital, Ltd. Liab. Co.*, which also involved the sale of structured settlements. No. 15-81002-CIV-MARRA, 2017 U.S. Dist. LEXIS 231500 (S.D. Fla. Mar. 30, 2017). The *Buja* court similarly concluded that a transaction that pairs an offer of services necessary with a purchase constitutes solicitation or telemarketing:

> As part of the transaction, a structured-settlement company, such as Defendants, may perform a number of services to effectuate the transaction (for a fee charged to the payee), including the following: (i) process the payee's application; (ii) compute the [present] value of the structured settlement; (iii) comply with underwriting requirements; (iv) prepare and process the contract; and (v) comply with applicable disclosure laws and other laws pertaining to court approval.

*Id.* at *20.

Here, an offer to purchase Plaintiff's home is—on its face—an offer to purchase something, but it also necessarily requires Defendant to offer a host of real estate services to consummate the transaction, like in *Anderson* and *Buja*. Notably, Defendant's website requires consumers to attest that "[y]ou do not have an exclusive contractual or other arrangement with any real estate professional," further illustrating that Defendant seeks to supplant the role of a traditional real estate agent in this process. *See* Ex. B. This is because Defendant likely seeks to perform these services to justify its fee. For example, Defendant would likely need to appraise the fair market value of Plaintiff's home and arrange for escrow and title services to complete the transaction, just

11

as a real estate agent would. Defendant would also likely need to complete necessary legal paperwork and draft the real estate purchase contract. Given that consumers could not use a real estate agent as part of the transaction, but those additional services must still be performed, it is reasonable to infer that Defendant would offer or arrange for those services.

Defendant's cited authority is readily distinguishable. In *Jance v. Homerun Offer, LLC*, the court dismissed the TCPA complaint of a *pro se* plaintiff because, in relevant part, the communications at issue were "offers to buy something from the recipient of the call," and thus, not "telemarketing." No. CV-20- 00482-TUC-JGZ, 2021 U.S. Dist. LEXIS 143145, at *12 (D. Ariz. July 29, 2021). However, the *Jance* court relegated its analysis to a few cursory sentences, and notably, the plaintiff did not address either the 2005 FCC Order or any argument regarding a bundling of services with an offer to purchase. *See* Ex. D.

In *Orea v. Nielsen Audio, Inc.*, another case cited by Defendant, the court dismissed a plaintiff's claims regarding the receipt of "market research survey" communications because both the TCPA's legislative history and the FCC explicitly noted that such surveys were not "telephone solicitations" absent evidence of additional pretext. No. 14-cv-04235-JCS, 2015 U.S. Dist. LEXIS 54916, at *9 (N.D. Cal. Apr. 24, 2015). Similarly, in *Knutson v. Blue Light Sec., Inc.*, the court found that an offer of a "$200 gift card for the contact information of the home buyers" of a home that the plaintiff—who operated a real estate business—sold, did not qualify as a telemarketing message because the specific call at issue involved only a purchase of information without any ancillary services. 17CV134-LAB (JMA), 2018 U.S. Dist. LEXIS 36745, at *9-10 (S.D. Cal. Mar. 6, 2018). Here, Plaintiff is an individual homeowner—not a real estate business—and the telemarketing messages at issue necessarily implicate the offer of services rather than a business-to-business offer of cash for information, as was the case in *Knutson*. *See also Anderson*, 2021

U.S. Dist. LEXIS 242657, at *17 (distinguishing *Knutson*, *Jance*, and *Orea*). Lastly, *Suttles v. Facebook, Inc.*, another case cited by Defendant, involved a series of text messages containing automated verification codes seemingly sent to a wrong number. 461 F. Supp. 3d 479, 481 (W.D. Tex. 2020). The *Suttles* court found that automated Facebook verification code messages were not "solicitations" because any connection to a sales transaction was too attenuated. *Id.* at 482-83.

Either way, it is premature to determine, as a matter of law, Defendant's intended use and purpose of the text messages at issue, given its inconsistent representations and Plaintiff's allegation that Defendant sought to offer "home selling services" akin to those offered by real estate agents. *See, e.g.*, *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2021 U.S. Dist. LEXIS 70436, at *21-23 (N.D. Cal. Apr. 12, 2021) (denying summary judgment where "Defendant argues that these calls were not made for telemarketing purposes."). Too many factual questions are unanswered by Defendant's argument, whereas Plaintiff's allegations—which must be taken as true at this stage—provide a cogent and plausible set of facts that entitle her to relief. As a result, this Court should deny Defendant's motion, even if it interprets Defendant's text messages solely as an attempt to purchase Plaintiff's home.

## IV. Telemarketing identification regulations apply to text messages and telephone calls.

Without citing a single case supporting its proposition, Defendant suggests that "the seller-identification regulations apply only to *calls*, not text messages," and this Court should accordingly dismiss Plaintiff's claims involving 47 C.F.R. § 64.1200(d)(4). ECF No. 9 at 16 (emphasis in original). However, while Defendant identifies no authority endorsing its conclusion, numerous courts—including those within this Circuit—find that this regulation applies to telemarketing text messages. This Court should not depart from this well-reasoned precedent.[5]

---

[5]  *Cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 157 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).").

As an initial matter, in 2003, the FCC stated that telemarketing rules apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls" under a heading titled "Telemarketing Calls to Wireless Numbers," and in doing so noted that "companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 272 (2003).

Consistent with that, courts within this Circuit frequently deny motions to dismiss or for summary judgment premised on violations of § 64.1200(d) when the sender delivers telemarketing text messages. *See, e.g.*, *Hand v. Beach Entm't Kc*, 456 F. Supp. 3d 1099, 1125 (W.D. Mo. 2020) (denying defendants' motion for summary judgment based on arguments that "(1) § 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber;' (2) Hand lacks a private right of action to redress violations of 47 C.F.R. § 64.1200(d).") (Laughrey, J.); *accord Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1069 (W.D. Mo. 2019) (denying motion to dismiss claims of violations of 47 C.F.R. § 64.1200(d) involving telemarketing text messages) (Laughrey, J.); *Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 U.S. Dist. LEXIS 170620, at *23 (N.D. Iowa Sep. 9, 2021) (same); *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330, at *54 (W.D. Mo. Apr. 28, 2020) (same) (Laughrey, J.); *Taylor v. KC VIN, LLC*, No. 4:19-cv-00110-NKL, 2019 U.S. Dist. LEXIS 207797, at *28 (W.D. Mo. Dec. 3, 2019) (same) (Laughrey, J.).[6]

To be sure, Defendant's exact argument was recently rejected in *Pariseau v. Built USA,*

---

[6]    Outside this Circuit, courts also apply the same conclusion to similar claims as those raised by Plaintiff, also involving text messages. *See, e.g.*, *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1185 (D. Utah 2021) (denying motion to dismiss, and finding that telemarketing text messages that "failed to provide the 'legal name of the business,' . . . ostensibly violated the regulation.").

*LLC*, No. 8:21-cv-2902-SDM-JSS, 2022 U.S. Dist. LEXIS 139321, at *4 (M.D. Fla. Aug. 5, 2022). There, the defendant suggested that the plaintiff's allegations regarding violations of § 64.1200(d) "fail to state a claim because 47 U.S.C. § 227(c)(5) confers a claim on a recipient of at least two 'telephone call[s]'— not text messages. Because Pariseau alleges the receipt of text messages only, Built USA argues that Counts I and II warrant dismissal." *Id.* In rejecting the defendant's argument, the court collected cases (1) concluding that "Section 227(c)(5) confers a claim on a person receiving more than one voice call or text message," and (2) concluding that "a text message is a telephone call under the TCPA." *Id.* at *5 (citing *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302 (11th Cir. 2015)). In doing so, it also noted that "the FCC reiterates that the TCPA affords text messages 'the same consumer protections . . . as voice calls.'" *Id.*

Defendant's contrary interpretation draws regulatory distinctions that the FCC does not recognize, and which is both directly and indirectly rejected by courts within this Circuit and nationwide. In doing so, Defendant identifies no authority supporting its position, aside from cases discussing general principles that do not apply here. In the absence of any authority, this Court should not rule that—as a matter of law—the TCPA's telemarketing regulations do not apply to text messages, and should accordingly deny Defendant's motion to dismiss.

**V.      If this Court finds any of Plaintiff's allegations lacking, it should allow leave to amend.**

Should this Court find any of Plaintiff's allegations lacking—it should not—this Court should allow Plaintiff leave to file an amended class action complaint. *See* Fed. R. Civ. P. 15(a)(2).

**Conclusion**

For all of the reasons discussed herein, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss in its entirety. Alternatively, Plaintiff requests leave to file an amended complaint.

Date: January 16, 2023

/s/ Alex D. Kruzyk
Alex D. Kruzyk (*pro hac vice*)
PARDELL, KRUZYK & GIRIBALDO, PLLC
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com

Michael L. Greenwald (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tele: (561) 826-5477
mgreenwald@gdrlawfirm.com

Anthony E. Lacroix
LaCroix Law
1600 Genessee, Suite 956
Kansas City, Missouri 64102
Tele: (816) 399-4380
tony@lacroixlawkc.com

*Counsel for Plaintiff and the proposed classes*