# EXHIBIT D

FILED ✓    LODGED
RECEIVED    COPY

JAN 12 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Josh M Jance
3223 E Kleindale Road
Tucson Arizona, 85716
520-444-4943
JoshJance@GMX.com
Pro Per

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Josh M. Jance,

        Plaintiff,

    vs.

Homerun Offer LLC, et al.,

        Defendant

) Case No.: No. CV-20-00482-TUC-JGZ
)
) **RESPONSE TO DEFENDANTS' MOITON TO DISMISS**
) **THE COMPLAINT**
)
)
) **HON. JUDGE JENNIFER G. ZIPPS PRESIDING**
)
)
)

    Plaintiff, Josh M. Jance, opposes the motion of Defendants, Homerun Offer LLC,

et al., to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

Defendants argue that the Court should dismiss the Complaint in its entirety, because,

first, Defendants' claim that Plaintiff has not alleged plausible facts that

Defendant's utilized an automatic telephone dialing system ("ATDS") to make the calls

at issue, second, Defendants' claim that alleged calls were not prohibited under the

TCPA, third, Defendants' claim that there is no private right of action for "spoofing"

by the Defendant, and fourth, Defendants' claim that Plaintiff has not plead

sufficient factual allegations with respect to Defendant All Star Investments, LLC

that demonstrate a plausible violation of the TCPA, and fifth, Defendants' claim that

Defendant All Star Investments, LLC should be dismissed from this action due to the

Plaintiff's Second Amended Claim allegedly failing to allege sufficient facts showing

that the Court can exercise personal jurisdiction over All Star Investments, LLC. The

court should reject these arguments because, first, the Second Amended Complaint

("SAC") more than sufficiently contains "enough facts to state a claim to relief that

1   is plausible on its face," second, the Defendants' Motion to Dismiss completely

2   ignores a recent Appellate Court ruling overturning a motion to dismiss in TCPA cases

3   involving offers to buy from telephone consumers, third, Plaintiff's referencing of

4   violations of 47 U.S.C. § 227(e) by the Defendant in the SAC gets to the "willful"

5   nature of the Defendants' violations of the TCPA (irrespective of whomever has a

6   lawful right of action) as well as being in direct response to the Defendants' request

7   for the Plaintiff to include that detail in the SAC, fourth, Plaintiff has alleged

8   sufficient facts in the SAC that All Star Investments, LLC is the ultimate beneficiary

9   of the telemarketing activities engaged in by Homerun Offer, LLC and therefore subject

10  to vicarious liability of any TCPA violations by Homerun Offer, LLC, and fifth, the

11  Court has specific jurisdiction in this case over All Star Investments, LLC because

12  the SAC clearly pleaded facts showing an agency relationship existing between All Star

13  Investments, LLC and Homerun Offer, LLC.

14  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

15  <u>**INTRODUCTION**</u>

16      The Telephone Consumer Protection Act (TCPA) was ostensibly written, and

17  promulgated into law, with the express intent of protecting telephone consumers from

18  telemarketing fraud and abuse. That is precisely what Josh M. Jance v. Homerun Offer

19  LLC et al. is about. Plaintiff has repeatedly asked the Defendant to put the

20  Plaintiff's residential cell phone number on the Defendant's company specific "Do Not

21  Call" list. Plaintiff has repeatedly requested a written copy of the Defendant's "Do

22  Not Call" list policy. Plaintiff has repeatedly instructed the caller calling on

23  behalf of the Defendant to go kill herself. The Defendant does not care. The Defendant

24  continued to harass the Plaintiff with unwanted telephone solicitations violating the

25  TCPA no matter what the Plaintiff said or did. Plaintiff contends that he has employed

26  more than sufficiently robust language with the caller calling on behalf of the

27  Defendant such that any rational person should come to the obvious conclusion that

28  continuing to call the Plaintiff constitutes a profoundly unwise (and illegal) policy

1   on their part. Had the Defendant stopped calling the Plaintiff after Plaintiff first

2   requested to be placed on the Defendant's "Do Not Call" list back on January 16th,

3   2020, this lawsuit never would have been filed. Instead, the Defendant called the

4   Plaintiff another 28 more times in violation of the TCPA, sometimes multiple times per

5   day.

6

7

8                                    **BACKGROUND**

9

10      On Tuesday November 10th, 2020, Plaintiff and Defense council discussed

11  Defendants' intention to file a Motion to Dismiss Plaintiff's claim in this case on

12  the telephone. During that phone call, and in a follow-up e-mail later that day, the

13  Defense specified the items desired in the Second Amended Claim to satisfy Defense

14  with regards to a potential Rule 12 (b)/Rule 12 (c) motion to dismiss. (Copy of e-mail

15  included as Exhibit A) This list of items requested included the following information

16  for each call:

17          1. "The date and time the call was made

18          2. Who made the call

19          3. What number the call was made from

20          4. What number was called

21          5. What was said/done in the call. In the current amended claim for example,

22             there are various allegations about requests for a written policy, caller

23             ID, requests not to be called, the purpose of calls (your real property).

24             Etc. But those allegations are general in nature and are not tied to any

25             particular call or any particular defendant.

26          6. What statutes/regulations were allegedly violated by the call"

27      On December 3rd, 2020, Plaintiff filed the Second Amended Complaint ("SAC")

28  with the Court (Dkt. 16). Further, plaintiff contends that the SAC addresses every

1    single item raised by Defense both in the telephone conference held between parties on

2    November 10th, 2020, as well as in the e-mail Defense Council Ben Nielson sent to

3    Plaintiff (also on November 10th, 2020) with regards to satisfying Defense requirements

4    pursuant to any potential Rule 12(b)/Rule 12(c) motion to dismiss.

5         On December 14th, 2020, Defense filed a Motion to Dismiss (Dkt. 19) ("DMTD")

6    Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(2) and Rule 12(b)(6). Most

7    significantly, Defendant has not brought forward any evidence what so ever to support

8    any issue raised in the DMTD. Nor has Defendant disputed (let alone presented any

9    evidence) that it did not make such calls to thousands, if not hundreds of thousands,

10   of individuals, like Plaintiff, in an effort to solicit the purchase of their

11   property. Instead, Defendant attempts to argue that Plaintiff has not plead sufficient

12   details about the calls Plaintiff received to state a claim under the TCPA. This is

13   absurd. The SAC, all 94 pages of it, addresses every single request for detail made by

14   the Defendant in the e-mail sent to Plaintiff on November 11th, 2020. (Exhibit A)

15   Further, the SAC provides a level of detail regarding each call that goes far beyond

16   what other courts have required as far as sustaining Rule 12(b)(6) motions to dismiss

17   at the pleading stage. Here, Plaintiff sufficiently alleges enough facts to establish

18   (amongst other claims), (1) use of an ATDS by the Defendant, (2) failure to honor a

19   company specific "Do Not Call" List, and (3) vicarious liability amongst Defendants.

20   To demand more, as the Defendant does, would contravene Ninth Circuit precedent and

21   unfairly burden Plaintiff at the pleading stage to somehow Determine the precise

22   equipment Defendant used to call the Plaintiff (and to unravel the morass of nested

23   LLCs and deliberately abstruse ownership structures utilized by Defendant) with

24   regards to the calls placed by the Defendant before there has been any opportunity for

25   corroborating discovery. As such, motion to Dismiss should be denied.

26

27

28

1

**ARGUMENT**

2

**I. LEGAL STANDARD**

3

4      A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P.

5   12(b)(6) "tests the legal sufficiency of a complaint." *Jones v. HCA*, 16F Supp. 3d 622,

6   628 (E.D. Va. 2014). To survive such a motion, a complaint must contain "enough facts

7   to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

8   550 U.S. 544, 570 (2007). "[A] claim has facial plausibility when the plaintiff pleads

9   factual content that allows the court to draw the reasonable inference that the

10   defendant is liable for the misconduct alleged." *Jones*, 16F. Supp. 3d at 628.

11      A motion to dismiss contesting the court's personal jurisdiction pursuant to

12   Fed. R. Civ. P. 12(b)(2) tests the sufficiency of contacts by a Defendant within an

13   area to establish that the Defendant isn't hauled into a distant and inconvenient

14   forum, which the Defendant has little or no connection with.

15

16      **A.   Response to Defendant's Claim that Plaintiff Has Failed To State Any Claim**

17   **Under the TCPA**

18

19      In the Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint

20   ("DMTD"), Defense writes that "Plaintiff has failed to allege facts demonstrating even

21   the basic elements of such a claim." (DMTD ¶¶ page 7 11-12) This statement in the DMTD

22   is demonstrably false.

23      For TCPA ATDS cases where Defendants file Rule 12(b)(6) Motions to Dismiss,

24   Plaintiff's confront two central issues. First, when a telephone consumer receives a

25   call from someone "it would be impossible, absent discovery, for any plaintiff to

26   gather sufficient evidence regarding the type of machine used." Lozano v. Twentieth

27   Century Fox Film Corp., 702 F. Supp. 2d 999, 1010-11 (N.D. Ill. 2010). Second, there

28   is no established "pleading standard" for claims to overcome a Rule 12(b)(6) motion to

1   dismiss when alleging use of an ATDS. (*Michael Drew v. America Directions Research*

2   *Group*, Case No. 20-cv-00402, 2020 WL6118539 (N.D. Ill. Oct. 16, 2020) relying on

3   Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 460 (7ᵗʰ Cir. 2020)) As such, Plaintiff

4   included a level of detail in the SAC to far exceed what other courts have required to

5   sustain a Rule 12(b)(6) motion to dismiss:

6        1. Plaintiff alleges a pause of several seconds at the beginning of each call

7        2. Plaintiff alleges a generic impersonal text recited by the caller to

8           purchase Plaintiff's property

9        3. Plaintiff alleges use of VoIPS by Defendant to make the calls

10       4. Plaintiff alleges use of "spoofed" numbers to place calls made to Plaintiff

11   This exceeds the finding in *Zeidel v. Nat'l Gas & Elec., LLC* (18CV06792(N.D. Ill. May

12   17, 2019)).

13       In *Zeidel Id.*, the Court found that allegations of "generic promotional

14   content" and "different spoofed numbers" sufficient to state a claim for ATDS use. The

15   SAC more than sufficiently alleges "generic promotional content" (impersonal/non-

16   specific offers to purchase Plaintiff's property) and "different spoofed numbers"

17   (Plaintiff alleges all numbers utilized by Defendant to call Plaintiff were

18   "spoofed"). The SAC satisfies both pleading metrics.

19       Defense argues that "Plaintiff's attempt to satisfy this ("spoofing") element

20   of his § 227(b) claims rests entirely on his bald and unsupported allegation that the

21   calls places to his cellular telephone were made using "spoofed' VoIP calls." (DMTD

22   page 7 (line 25.5)- page 8 (line 2). The claim is not "bald." When Plaintiff

23   investigated the origin of the calls Plaintiff received, Plaintiff specifically looked

24   for telemarketers in Benson, Arizona and could not find any telemarketers, let alone

25   one engaging in a telephone campaign targeting Pima County property owners and on

26   behalf of the Defendant. If the Defendant in fact operates a call center out of Benson

27   Arizona (or contracts with one), then that fact can be established in discovery.

28

1    Further, Defense could have provided affidavits and/or contracts documenting the

2    existence of such a call center in Benson, Arizona in the DMTD, but failed to do so.

3         **B.   Response to Defendant's Claim that the alleged calls were not prohibited**

4    **under 47 U.S.C. § 227(c)**

5         Defendant alleges that the calls made to Plaintiff's residential cellular

6    telephone do not violate 47 U.S.C. § 227(c). This argument completely ignores more

7    recent court findings (Fischbein v. Olson Research Group, Inc. 959 F. 3d 559-568) that

8    solicitations to purchase count as advertisements under the TCPA. More specifically,

9    the majority opinion held that "a fax attempting to sell goods or services is no less

10   commercial than a fax attempting to sell goods or services to the recipient."

11   Plaintiff contends that a call made attempting to buy Plaintiff's property is no less

12   commercial than a call made intending to sell Plaintiff property. Further, Plaintiff

13   would argue that language substantially consisting of "put me on your do not call

14   list, provide me with a written copy of your do not call list policy, and then go kill

15   yourself," should more than sufficiently communicate, and without any ambiguity, that

16   the recipient of that call wishes for the caller to henceforth refrain from dialing

17   that number.

18        Additionally, Defendant claims that Plaintiff must allege that Plaintiff's

19   telephone number is registered on the National "Do Not Call" List. This is patently

20   false.

21        47 CFR § 64.1200 (d) (3) begins "If a person or entity making a call for

22   telemarketing purposes (or on whose behalf such a call is made) receives a request

23   from a residential telephone subscriber not to receive calls from that person or

24   entity, the person or entity must record the request and place the subscriber's name,

25   if provided, and telephone number on the do-not-call list at the time the request is

26   made." Plaintiff made that initial request to be placed on Defendant's "Do Not Call"

27   list on January 16th, 2020 and Defendant failed to honor that request.

28

1    47 CFR § 64.1200 (e) states "The rules set forth in paragraph (c) and (d) of

2    this section are applicable to any person or entity making telephone solicitations or

3    telemarketing calls to wireless telephone numbers to the extent described in the

4    Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and

5    Regulations Implementing the Telephone Consumer Protection Act of 1991."" The text of

6    the law couldn't be any plainer.

7    As alleged by Plaintiff repeatedly in the SAC, Defendant called the Plaintiff's

8    cellular telephone, and Plaintiff repeatedly requested to be placed on the Defendant's

9    "Do Not Call List." Further, solicitations to buy Plaintiff's property are still

10   solicitations. Nowhere in 47 CFR 64.1200 does it obligate Telephone consumers to place

11   their phone number on the National Do Not Call Registry. The Company Specific Do Not

12   Call List requirement (47 CFR § 64.1200 (d) (3)) is specifically intended to give

13   consumers the flexibility to pick and choose which telemarketers they do not wish to

14   receive solicitations (via telephone, fax or text) from.

15   **C.   Response to Defendant's Claim that Plaintiff has no private right of Action**

16   **under 47 U.S.C. § 227(e)**

17   Plaintiff agrees that Plaintiff has no private right of action under 47 U.S.C.

18   § 227(e). Plaintiff included Defendant's "spoofing" of the phone numbers used to call

19   the Plaintiff's cellular telephone in the SAC due to three main reasons:

20   First, "spoofing" numbers is consistent with to use of an ATDS. (*Zeidel Id.*)

21   Second, this gets to Defendant's "willful" violation of the TCPA because it

22   shows that the Defendant engaged in serial TCPA violations whether the right of action

23   falls on an individual specifically harmed by the Defendant's lawbreaking, the

24   Attorney General for the State of Arizona, the Attorney General for the State of

25   Nevada, or the enforcement arm of the Federal Communications Commission ("FCC").

26   Third, in the telephone call and e-mail from November 10th, 2020, when parties

27   discussed Defendant's intention to file a motion to dismiss, Defendant specifically

28   requested that Plaintiff identify in the SAC "[w]hat statutes/regulations were

allegedly violated by the call." (Exhibit A) That e-mail did **not** specify that

Plaintiff should identify in the SAC "[w]hat statutes/regulations were allegedly

violated by the call" where Plaintiff has a private right of action. The Defendant

used "spoofed" numbers. Private right of action or not, that violates 47 U.S.C. §

227(e).

**D.   Response to Defendant's Claim that Defendant All Star Investments, LLC,
Should be Dismissed under Rule 12 (b)(6)**

Defendant alleges that Plaintiff failed to plead sufficient facts tying All

Star Investments, LLC to the TCPA wrongdoing of Homerun Offer, LLC in this action.

This is completely false, and puts an undue burden on Plaintiff at the pleading stage.

The facts are as follows:

1. Both Defendants have the same President and CEO (Ryan Pineda)

2. The parent company of both Defendants (Redeemed Homes, LLC) has the same
   President and CEO as the Defendants (Ryan Pineda)

3. For all the calls made by Homerun Offer, LLC, and targeting property owners
   in Pima County, there is no evidence Homerun Offer, LLC actually ever
   consummated any real estate transactions in Pima County.

4. There is evidence that All Star Investments, LLC purchased 6 properties in
   Pima County.

5. Plaintiff alleges in SAC that all 6 of those property purchases came about
   as a result of the telephone campaign engaged in by Homerun Offer, LLC and
   on behalf of All Star Investments, LLC. (SAC ¶¶ 106-112)

Here, Plaintiff's allegations are more than sufficient at this stage of the

litigation. Even the Defendant stipulates that All Star Investments, LLC would be held

vicariously liable for Homerun Offer LLC's violations of the TCPA (DMTD Page 14)

"[u]nder federal common law principles of agency for violations of either section

227(b) or section 227(c) that are committed by third-party telemarketers." *Gomez v.*

*Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) quoting *In re Joint Petition*

1  *Filed by Dish Network*, LLC, 28 FCC Rcd. 6574, 6574 (2013)) The central issue

2  distinguishing this case from *Gomez* is the simple fact that the same individual (Ryan

3  Pineda) is the President and CEO of both the agent and the principal as well as the

4  parent company for both agent and principal. With regards to agent-principal law,

5  "whether an agency relationship exists is for a court to decide based on an assessment

6  of the facts of the relationship and not based on how the parties define their

7  relationship." *Henderson v. United Student Aid Funds*, 17-55373. Plaintiff contends

8  that based on the facts, "a reasonable jury could hold the [D]efendant (All Star

9  Investments, LLC) vicariously liable for alleged TCPA violations" by Homerun Offer,

10  LLC. *Id.*

11

12  **Response To Defendant's Rule 12(b)(2) Motion to Dismiss All Star Investments,**

13  **LLC from this Action**

14

15          In the DMTD, the Defense rightly notes that when courts weigh the merits of a

16  Rule 12(b)(2) dismissal motion, courts focus on the "relationship among the defendant,

17  the forum, and the litigation," (DMTD quoting *Schaffer v. Heitner*, 433 U.S. 186, 204

18  (1977) in order to make a determination on personal jurisdiction. Further, the

19  plaintiff bears the burden of establishing that personal jurisdiction exists over a

20  defendant. (*Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (2011))

21  Given that the DMTD is based solely on written materials, as opposed to an evidentiary

22  hearing, the plaintiff is only required to make a *prima facie* showing of

23  jurisdictional facts to withstand the motion to dismiss under Rule 12 (b)(2) (Marvix

24  Photo, 647 F.3d at 1223). Further, Under the *Marvix Photo* precedent, courts do not

25  assume the truth of allegations in a pleading which are contradicted by affidavit. No

26  such affidavits contradicting any part of the SAC are included in the DMTD. In fact,

27  the entirety of the Defendant's argument with regards to the Rule 12(b)(2) dismissal

28  of All Star Investments, LLC from this action can be simplified down to the claim that

the SAC does not plead sufficient facts to establish the court's personal jurisdiction.

For a pleading to establish that a court has specific jurisdiction over a defendant, a pleading must show that the "defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 134 S.CT. 1115, 1121 (2014) Additionally, "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, {an} activity or occurrence that takes place in the forum state." *Bristol-Meyers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 914, 919 (2011))

In the Ninth Circuit, a three-part test is utilized to determine if specific jurisdiction exists: (1) the non-resident must purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice (it must be reasonable). *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. (2015)) The SAC satisfies all three parts of the 9th Circuit test for determining if specific jurisdiction exists.

**Part 1 of the Specific Jurisdiction test** – Does the non-resident purposefully direct his activities or consummate some transaction with the forum or resident thereof? Unequivocally, the answer is 'yes.' This is established in the SAC in several ways.

First, the generic script as stated by the caller employed or contracted by Defendants when calling the Plaintiff includes "I'm working with a local investor who's looking to buy a property in the area." SAC ¶¶ 12. Clearly, the caller is targeting property owners "in the area" (the forum state) and the "local investor" the caller is "working with" is All Star Investments, LLC.

Second, in the SAC ¶¶ 68 and 69, Plaintiff references six property transactions involving All Star Investments, LLC in Pima County (as documented in the Pima County Recorder's database), as well as alleging that for all six of those transactions "the initial contact with the other parties to those transactions came about as a direct result of the telemarketing activities of Defendant Homerun Offer, LLC." SAC ¶¶ 69.

Third, in SAC ¶¶ 70, Plaintiff references an Instagram post made from the account identified as "ryanpinedashow." The Instagram post (Exhibit B), which includes a picture of Ryan Pineda (President and CEO of All Star Investments, Homerun Offer, and parent company for both Defendants Redeemed Homes) wearing a University of Arizona t-shirt, specifically states "Once we decided to start investing in Tucson, I bought this shirt." The calls made by Defendant Homerun Offer, LLC (under the direction and for the benefit of All Star Investments, LLC) that violate the TCPA were clearly directed at the Plaintiff, a resident of the forum jurisdiction.

Fourth, Plaintiff alleges in the SAC that the Defendant engaged in "spoofing" specifically to better facilitate targeting of residents for Homerun Offer's calling campaign in the forum state. (SAC ¶¶ 23-27)

**Part 2 of the Specific Jurisdiction test** – Does the claim arise out of or relate to the defendant's forum related activities? Again, the unequivocal answer is 'yes.' The justification for this answer is threefold:

First – There is a common ownership structure among the Defendants. Homerun Offer, LLC and All Star Investments, LLC are both subsidiaries of Redeemed Homes, LLC. Further, the President and CEO of all three entities is the same person, Ryan Pineda. There is no evidence to suggest (and the Defense has not provided any evidence or affidavits to that effect) that the calls in question were made by anyone other than either an agent or employee of Homerun Offer, LLC. In ¶¶ 65-69 of the SAC, Plaintiff goes through the allegations showing that the calling campaign engaged in by Homerun Offer, LLC, and targeting Pima County residents, was designed to find other parties willing to consummate a real estate transaction with All Star Investments, LLC. This

1  gets directly to the vicarious liability of All Star Investments, LLC for the actions
2  of Homerun Offer, LLC that violate the TCPA in the forum state.

3       Second – For the Defendant to argue that Plaintiff's claim is unrelated to All
4  Star Investments, LLC's forum related activities, the Defendant would have to show
5  (either with documentation or in the form of affidavits) that all six of the
6  properties purchased by All Star Investments, LLC in Pima County came about from some
7  means OTHER than stemming from the calling campaign engaged in by Homerun Offer, LLC
8  and targeting Pima County residents. Defendant has provided no such documentation or
9  affidavits in the DMTD.

10      Third – For the Defendant to argue that Plaintiff's claim is unrelated to All
11 Star Investments, LLC's forum related activities, the Defendant would have to provide
12 some sort of explanation (along with supporting documentation and/or affidavits) for
13 why Homerun Offer, LLC, was engaging in the calling campaign targeting Pima County
14 residents in the first place. In addition, that explanation would have to establish
15 that Homerun Offer, LLC's calling campaign targeting Pima County residents was
16 completely unrelated to the property purchases made by All Star Investments, LLC in
17 Pima County. Defendant has provided no such explanation, documentation, or affidavits
18 in the DMTD.

19      **Part 3 of the Specific Jurisdiction test** – Does the exercise of jurisdiction
20 comport with fair play and substantial justice? Again, the unequivocal answer is
21 'yes.'

22      Dismissing All Star Investments, LLC from this action prior to any opportunity
23 for discovery is premature at this stage of the litigation, especially due to the fact
24 that the Defendant has provided no evidence contradicting Plaintiff's allegation that
25 an agent-beneficiary relationship exists between the Defendants.

26

27      Having shown that the Ninth Circuit's a three-part test to determine if
28 specific jurisdiction exists is satisfied, Plaintiff respectfully requests that the

Defendant's Rule 12(b)(2) Motion to Dismiss All Star Investments, LLC from this action is denied.

**CONCLUSION**

The TCPA is intended to protect telephone consumers from unwanted solicitations. The Plaintiff informed the Defendant on January 16th, 2020 that Plaintiff had no interest in ongoing calls from Defendant and soliciting Plaintiff to consummate a real estate transaction. The Defendant should have stopped calling Plaintiff then. Instead, Defendant called Plaintiff another twenty-eight more times. Additionally, the DMTD contains no evidence or affidavits contradicting anything Plaintiff alleges in the SAC. For the foregoing reasons, Plaintiff's allegations are more than sufficient at the pleading stage, and Plaintiff respectfully requests that the Court deny Defendant's Motions to Dismiss Plaintiff's Second Amended Complaint in its entirety.

Dated this 12th day of January, 2021

Josh M. Jance
3223 E Kleindale Road
Tucson, AZ 85716
520-444-4943
JoshJance@GMX.com
Pro Per

1

## Certificate of service

2

    I hereby certify that on January 12th, 2021, I delivered a copy of the attached

3

document via United States Mail to the following address:

4

5

    John Maston O'Neal

6

    Quarles & Brady LLP

7

    Renaissance One

8

    Two North Central Avenue

9

    Phoenix AZ, 85004-2391

10

11

12

    Dated this 12th day of January, 2021

13

    Josh M Jance

14

    2223 E Kleindale Road,

    Tucson, AZ 85716

15

    JoshJance@GMX.com

    520-444-4943

16

    Pro Per

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# GMX

## Motion to Dismiss [QBLLP-ACTIVE.FID41327776]

| | |
|---|---|
| **From:** | "Nielsen, Benjamin C." <Benjamin.Nielsen@quarles.com> |
| **To:** | "O'Neal, John M." <John.ONeal@quarles.com>, "Josh Jance@gmx.com" <Josh Jance@gmx.com> |
| **Cc:** | "Hitchens, Debra L." <Debra.Hitchens@quarles.com> |
| **Date:** | Nov 10, 2020 5:44:21 PM |

Mr. Jance,

Thanks for talking with us earlier today pursuant to Local Rule 12.1(c) and the Court's order. During our discussion, we expressed our intent to move to dismiss the Amended Claim on several grounds, including insufficient facts alleged in the Amended Claim. You indicated in response that you intended to further amend your pleading in a Second Amended Complaint. You asked that we email you regarding certain deficiencies that we perceive with the Amended Claim that could potentially be cured by amendment.

In that regard, we believe that you should amend to specify, for **each call which is the subject of your claims:**

-What number was called;

-What number the call was made from;

-Who made the call;

-The date and time the call was made;

-What was said/done in the call. In the current amended claim for example, there are various allegations about requests for a written policy, caller ID, requests not to be called, the purpose of calls (your real property), etc. But those allegations are general in nature and are not tied to any particular call or any particular defendant.

11/18/2020

-What statutes/regulations were allegedly violated by the call.

Best regards,

Ben



**Benjamin C. Nielsen** / Partner
Benjamin.Nielsen@quarles.com / LinkedIn
**Quarles & Brady LLP**
One Renaissance Square, Two North Central Avenue / Phoenix, AZ 85004-2391
Office 602-229-5223 / Cell 480-241-6616 / quarles.com
Assistant Debbie Hitchens (602) 230-5518

VISIT our COVID-19: Guidance for Clients page for the latest updates from Q&B attorneys

On Nov 10, 2020, at 4:25 PM, Nielsen, Benjamin C. (PHX x3223) <Benjamin.Nielsen@quarles.com> wrote:

Mr. Jance,

I've attached for your review a stipulation and proposed order that we'd like to file today. We can sign it on your behalf (indicating that it is with your permission) and file it electronically from our end. You'll get an as-filed copy afterward. Do we have your permission to sign this on your behalf and file today? Please let us know as soon as you can as the Court day is winding down.

Thanks,

Ben

Benjamin C. Nielsen / Partner
Quarles & Brady LLP
Benjamin.Nielsen@quarles.com
One Renaissance Square, Two North Central Avenue / Phoenix, AZ 85004-2391
Office: 602-229-5223 / Cell: 480-241-6616 / quarles.com

2/5

# EXHIBIT B



**ryanpinedashow** · Follow
Tucson, Arizona

**ryanpinedashow** Once we decided to start investing in Tucson, I bought this shirt. After a couple weeks of marketing, we've got two deals locked up! Now I can wear it and pledge my allegiance to the Wildcats 😈

48w

I will also pledge my allegiance go UNLV, CSUN, and whatever other town we can do business in 😈

**houses.and.cars.youtube** Whaaaaat! Arizona State fan here.

384 likes

SEPTEMBER 24, 2019

Add a comment...

Post