IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ELIZABETH EAGLE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GVG CAPITAL, LLC, d/b/a WeBuyHomes4Cash.org,<br><br>Defendant. | Case No. 22-cv-00638-SRB |

## ORDER

Before the Court is Defendant GVG Capital, LLC's ("Defendant") Motion to Dismiss for Failure to State a Claim. (Doc. #9.) For the reasons set forth below, the motion is DENIED.

### I. FACTUAL BACKGROUND

The following allegations are taken from Plaintiff Elizabeth Eagle's ("Plaintiff") Class Action Complaint (Doc. #1) without further attribution, unless otherwise noted. Only those allegations necessary to resolve the pending motion are discussed below. Additional allegations relevant to the parties' arguments are set forth in Section III.

Plaintiff is a resident of Kansas City, Missouri, and has a cellular telephone number. Plaintiff uses her cellular telephone as her personal residential telephone number. On August 22, 2012, Plaintiff registered her cellular telephone number with the National Do-Not-Call Registry ("DNC Registry"). Defendant is a marketing and lead generation company located in Texas.

In May 2022, Plaintiff began receiving text messages on her cellular telephone from a series of different telephone numbers. In general, the text messages asked Plaintiff whether she was interested in selling her home. For example, one text message stated: "I'm Isabella reaching out delivering super news presenting a fabulous proposition for your house! I already

tried to contact you quite a few times. If you're thinking about selling please give a few technicalities and behold your offering[.]" (Doc. #1, p. 3.)[1]

The text messages directed Plaintiff to the website WeBuyHomes4Cash.org, which is a real estate website that purports to buy homes and/or provides home selling services. Plaintiff believes that Defendant also collects and sells consumer data to other individuals/entities as "motivated home seller" leads. (Doc. #1, ¶ 23.) Plaintiff alleges that "Defendant either (1) solicited Plaintiff to sell her home to it at a discount in order for Defendant to resell Plaintiff's home at a profit, or (2) solicited Plaintiff to submit her information to Defendant's lead generation service and use Defendant's lead generation services, which Defendant would then sell to other businesses for a profit." (Doc. #1, ¶ 24.)

Plaintiff did not recognize the sender of the text messages, did not request any quotes for her home, and was not interested in Defendant's services or marketing. On several occasions, Plaintiff responded to the text messages with "STOP" or similar instructions. Nonetheless, Plaintiff received dozens of text messages from Defendant. Plaintiff alleges that "Defendant knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry." (Doc. #1, ¶ 33.) Plaintiff further alleges that "because Defendant repeatedly failed to heed Plaintiff's instructions to stop delivering text messages to her telephone number, Defendant did not maintain or adhere to any internal or external do-not call lists." (Doc. #1, ¶ 34.)

On October 7, 2022, Plaintiff filed this lawsuit against Defendant on behalf of herself and on behalf of all others similarly situated. Plaintiff alleges that Defendant's text messages violate the Telephone Consumer Protection Act ("TCPA") and accompanying regulations. *See* 47

---

[1] All page numbers refer to the pagination automatically generated by CM/ECF.

U.S.C. § 227(c)(5). Plaintiff asserts the following claims: Count I—Violation of 47 U.S.C. § 227(c)(5) On Behalf of the Federal Do-Not-Call Registry Class; Count II—Violation of 47 U.S.C. § 227(c)(5) On Behalf of the Revocation Class; and Count III—Violation of 47 U.S.C. § 227(c)(5) On Behalf of the Sender Identification Class. The legal framework applicable to these claims is discussed in Section III.

Defendant now moves to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6). Defendant argues that the Complaint does not adequately allege a violation of the TCPA. Plaintiff opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotations omitted). A court should generally not consider materials outside the complaint when resolving a motion to dismiss. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). However, a court may consider and take judicial notice of public records and information

publicly announced on the moving party's website. *WinRed, Inc. v. Ellison*, 581 F. Supp. 3d 1152, 1168 n.9 (D. Minn. 2022) (citing *Levy*, 477 F.3d at 991)).

## III. DISCUSSION

### A. Count I—Text Messages in Violation of the DNC Registry

In Count I, Plaintiff alleges that Defendant violated the TCPA by delivering, or causing to be delivered, "to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period[.]" (Doc. #1, ¶ 71.)

Under 47 U.S.C. § 227(c)(5), an individual may file a civil action if she "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [applicable] regulations." 47 U.S.C. § 227(c)(5).[2] The regulation applicable to Count I, 47 C.F.R. § 64.1200(c)(2), prohibits "any telephone solicitation to . . . a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2). "Solicitation" and "telemarking" are defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. §§ 64.1200(f)(13), (15).

#### 1. Whether the Text Messages Constitute a Solicitation

Defendant moves to dismiss Count I because Plaintiff "fails to allege a telephone solicitation." (Doc. #9, p. 9.) Specifically, Defendant argues that it "is alleged to have made an offer to buy [Plaintiff's] property, pure and simple. As [Defendant] is not alleged to have sent

---

[2] Each claim asserted by Plaintiff is based in part on a TCPA regulation. This Order primarily refers to the applicable regulations and not to § 227. *See Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1182 (D. Utah 2021) ("Because Section 227(c) merely authorizes the FCC to create regulations, Ms. Robison is really suing under the regulations.")

4

texts encouraging Plaintiff to buy or rent anything, it did not make a telephone solicitation." (Doc. #9, pp. 10-11) (citing cases).³ As set forth below, the Court rejects this argument.

The FCC has provided guidance on the meaning of solicitation in the real estate context. According to the FCC, "a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 ("2005 FCC Report"). In contrast, "calls by real estate agents who represent only the potential buyer to someone who has advertised their property for sale, do not constitute telephone solicitations, so long as the purpose of the call is to discuss a potential sale of the property to the represented buyer[.]" *Id.*

Based in part on this guidance, the Court finds that Count I adequately alleges a solicitation. Although Defendant may not technically be a real estate agent, the Complaint alleges that the text messages offered home selling services to Plaintiff. Plaintiff further alleges she had no interest in selling or advertising her home for sale. Plaintiff alleges that Defendant "solicited Plaintiff to submit her information to Defendant's lead generation service and use Defendant's lead generation services, which Defendant would then sell to other businesses for a profit." (Doc. #1, ¶ 24.)

This allegation is supported by information on Defendant's website, WeBuyHomes4Cash.org. According to that website:

> Information submitted on this site will be sent to a network which consists of real estate investors, real estate agents, and direct buyers[.] . . . . The purpose of webuyhomes4cash.org is to providing [sic] home selling services to it's [sic] users. To gain access to our services, you must submit certain information about yourself and the home you wish to sell, which information

---
³ Defendant's motion raises arguments applicable to all counts. For example, Defendant argues that Counts II and III should be dismissed for failure to allege that the text messages were a solicitation or were sent for a telemarketing purpose. That argument, as well as Defendant's other global arguments, are rejected for the reasons stated herein.

> will be used by webuyhomes4cash.org and such affiliates of webuyhomes4cash.org to assist you in the home selling process.

(Doc. #19-1; Doc. #19-2.)

Under these circumstances, the Complaint plausibly alleges that Defendant sent Plaintiff text messages:

> for the purpose of offering its 'home selling services' to her and to provide her information to interested third party purchasers, for a profit. In essence, Defendant is soliciting Plaintiff to act akin to her agent and provide her 'motivated home seller' information to interested third party buyers in exchange for payment.

(Doc. #19, p. 15) (citations omitted).

At the motion to dismiss stage, Plaintiff has adequately pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash*, 799 F.3d at 960. Consequently, the Court rejects Defendant's argument that Plaintiff has failed to adequately allege a solicitation. *See* 2005 FCC Report, at 3793 (stating that solicitation includes "calls by real estate agents to property owners for the purpose of offering their services to the owner"); *Panacci v. A1 Solar Power, Inc.*, Case No. 15–cv–00532–JCS, 2015 WL 3750112, at *6 (N.D. Cal. June 15, 2015) ("[R]eferring a consumer to another entity is a prohibited purpose if the purpose of the referral is to encourage a purchase, even . . . a purchase from another entity or a future purchase.")[4]

### 2. Whether Two or More Texts Were Sent Within a 12-Month Period

As stated above, the TCPA authorizes a private cause of action against an entity if it makes "more than one telephone call within any 12-month period . . . in violation of the

---

[4] Defendant also relies on a recent decision which dismissed a plaintiff's TCPA claim against it. *Pepper v. GVG Capital, LLC*, No. H-22-2912 (S.D. Tex. Jan. 17, 2023). The parties dispute whether *Pepper* is factually similar to this case. Even if it is, the Court agrees with Plaintiff that "it is premature to determine, as a matter of law, Defendant's intended use and purpose of the text messages at issue, given its inconsistent representations and Plaintiff's allegation that Defendant sought to offer 'home selling services' akin to those offered by real estate agents." (Doc. #19, p. 18.)

6

[applicable] regulations." 47 U.S.C. § 227(c)(5). Defendant argues Count I should be dismissed because Plaintiff "fails to allege the texts were sent within a 12-month period." (Doc. #9, p. 9.) Defendant contends that "Plaintiff has not alleged when any of the alleged text messages were made[.]" (Doc. #9, p. 15.) In response, Plaintiff argues she adequately alleged that Defendant "delivered multiple text messages to her telephone number between May 2022 and October 2022." (Doc. #19, p. 9.)[5]

Upon review, the Court agrees with Plaintiff. The Complaint alleges that "[i]n or around May 2022 and continuing through the present, Plaintiff began receiving text messages on her cellular telephone[.]" (Doc. #1, ¶ 13.) The Complaint includes screenshots of six different text messages sent to Plaintiff. (Doc. #1, ¶ 13.) Plaintiff alleges that she "has received dozens of similar text messages . . . from Defendant." (Doc. #1, ¶ 25.) Plaintiff filed this lawsuit in October 2022, less than one year after receiving the first text messages in May 2022. Under these circumstances, the Complaint adequately alleges "more than one telephone call within any 12-month period by or on behalf of the same entity[.]" 47 U.S.C. § 227(c)(5).[6] For all these reasons, Defendant's motion to dismiss Count I is denied.

### B. Count II—Text Messages in Violation of Plaintiff's Instructions to Stop

In Count II, Plaintiff alleges that Defendant violated 47 C.F.R. § 64.1200(d)(6). This regulation provides in part that "[a] person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made." 47 C.F.R.

---

[5] Although Defendant's reply brief "withdraws" this argument, the Court will resolve it for the record. (Doc. #24, p. 3 n.1.)

[6] To the extent Defendant moves to dismiss Counts II and/or III for similar reasons, that argument is rejected.

§ 64.1200(d)(6).  An entity must honor a do-no-call request "within a reasonable time" but not later than thirty days after the request is made.  47 C.F.R. §§ 64.1200(d)(3).

Here, the Complaint alleges that "on multiple occasions Plaintiff responded to [Defendant's] text messages with variations of the instruction to 'stop.'"  (Doc. #1, ¶ 20.)  Plaintiff alleges that "because Defendant repeatedly failed to heed [her] instructions to stop delivering text messages . . . . Defendant did not maintain or adhere to any internal . . . do not-call lists."  (Doc. #1, ¶ 34.)  Defendant argues this claim should be dismissed because the Complaint does not adequately allege that Defendant "lacks an internal DNC Policy."  (Doc. #9, pp. 11-16.)  According to Defendant, the Complaint fails "to allege the dates of any of the alleged text messages . . . because of this failure, we do not know whether or not those alleged texts were within the 30-day window to honor a request to be placed on an internal DNC list."  (Doc. #9, p. 14) (citing 47 U.S.C. § 64.1200(d)(3)).

Upon review, the Court rejects Defendant's arguments.  Plaintiff alleges that she repeatedly instructed Defendant to stop sending her text messages.  Despite those instructions, Plaintiff continued to receive text messages.  At the motion to dismiss stage, it is reasonable to infer that Defendant did not have internal procedures regarding do not call requests as required by 47 C.F.R. § 64.1200(d).  Additionally, Plaintiff alleges that Defendant sent her text messages between May 2022 and October 2022.  These allegations support an inference that Defendant did not honor Plaintiff's requests "within a reasonable time from the date such request[s] [were] made[.]"  47 C.F.R. §§ 64.1200(d)(3).  For all these reasons, Defendant's motion to dismiss Count II is denied.

### C. Count III—Text Messages that Lack Defendant's Contact Information

Count III asserts a claim under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4). Under § 64.1200(d)(4), "a person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

Plaintiff alleges that Defendant's text messages failed to provide the required contact information and disclosures. Defendant argues Count III should be dismissed because this regulation applies "only to calls, not text messages." (Doc. #9, p. 16.) Defendant emphasizes that the regulation refers to the "called party," the "caller," and the "call." (Doc. #9, p. 16) (quoting 47 U.S.C. § 64.1200(d)(4)). Defendant's reply brief acknowledges that "Plaintiff is undoubtedly correct that both the FCC and many courts have found the TCPA applies to text messages in the context of different sections of the TCPA." (Doc. #24, p. 10.) However, Defendant argues "this is a matter of first impression" and that "text messages are not subject to 47 C.F.R. § 64.1200(d)(4)."

Upon review, the Court finds that Count III is adequately pled. The FCC has recognized that the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003). In general, courts have also found that text messages fall under § 64.1200(d). *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020) (denying motion for summary judgment which argued that "§ 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber'"); *Doohan v.*

9

*CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1069 (W.D. Mo. 2019); *see also Pariseau v. Built USA, LLC*, 2022 WL 3139243, at *2 (M.D. Fla. Aug. 5, 2022) (" Because Pariseau in Counts I and II alleges the receipt of 'more than one' text message violating 47 C.F.R. § 64.1200(c) and (d), Counts I and II state a claim.")

At the motion to dismiss stage, Defendant has failed to show that § 64.1200(d)(4) should be treated differently than other provisions of § 64.1200(d). Sections 64.1200(d), (d)(1), (d)(2), (d)(3), (d)(4), (d)(5), and (d)(6) all refer to "call," "calls," or "do-not-call" lists. Consequently, the Court finds that Defendant's text messages fall under 47 C.F.R. § 64.1200(d)(4). However, Defendant may reassert this argument at the summary judgment stage.

### IV. CONCLUSION

For the foregoing reasons, and for the additional reasons stated by Plaintiff, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. #9) is DENIED. Defendant's request for oral argument is denied as unnecessary and as moot.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: January 31, 2023